FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 23, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERRI ELLEN P., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:18-CV-0058-JTR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney Dana C. Madsen represents Terri Ellen P. (Plaintiff); Special Assistant United States Attorney Michael Sinclair Howard represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 9. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On October 27, 2014, Plaintiff filed an application for Supplemental Security Income benefits.[1] Tr. 195-204. Plaintiff alleged a disability onset date of

---

[1] Plaintiff's application for Supplemental Security Income benefits is dated October 28, 2014. Tr. 203. During the administrative hearing, Plaintiff agreed to amend the alleged disability onset date to October 27, 2014, the date identified at the hearing as the application date. Tr. 41. Throughout this Order, the Court will

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

October 1, 2009, Tr. 21, 196, 217, due to Degenerative Disc Disease (DDD), Bipolar Disorder, Anxiety, Post-Traumatic Stress Disorder (PTSD), and Personality Disorder.  Tr. 196, 221.  Plaintiff later amended her alleged disability onset date to October 27, 2014, the filing date of her application for Supplemental Security Income benefits.  TR. 21, 41.  Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) R.J. Payne held a hearing on November 1, 2016, Tr. 21, 39-86, and issued an unfavorable decision on December 8, 2016.  Tr. 18-36.  The Appeals Council denied review on December 18, 2017.  Tr. 1-7.  The ALJ's December 8, 2016, decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on February 16, 2018.  ECF No. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on April 12, 1971, and was 43 years old on the date the application was filed, October 27, 2014.  Tr. 30, 195.  She attended school up until the seventh grade and later obtained her GED.  Tr. 60, 223.  Plaintiff testified at the administrative hearing on November 1, 2016, that she last worked as a ground cleanup helper for a tree service.  Tr. 62.  She also worked for a cleaning service.  Tr. 61.  Plaintiff's disability report indicates that she stopped working because of her conditions on October 1, 2009.  Tr. 221-222.

---

refer to the application date as October 27, 2014, to be consistent with the decision of the Administrative Law Judge.

Plaintiff testified that the main issues keeping her from being able to work are lower back pain that also affects her legs, carpal tunnel syndrome (CTS) in both hands, and mood swings that cause her to alternate between mania and depression. Tr. 67-71, 76-77. She stated that with medication, her lower back pain is usually about a six or seven on a scale of one to ten, with ten being the most pain. Tr. 62. She noted that, at its worst, the pain can get to a nine. Tr. 63. Plaintiff testified that her back pain affects her legs, but mainly her right leg. Tr. 63, 67. She stated that she has numbness and aches in her right leg, and she easily loses her balance. Tr. 67-68. Plaintiff testified that, despite undergoing carpal tunnel surgery on her right hand, she continues to experience shaking and has no strength in her right hand. Tr. 68-69. She stated that she has not seen a doctor for this issue. Tr. 68-69. She also testified that she has numbness and aches in her left hand, but she has not had her left hand tested. Tr. 70-71. Plaintiff stated that she experiences mood swings which lead to mania and depression. Tr. 76-77. She testified that she gets anxiety in crowds of people. Tr. 75-76, 80. Plaintiff testified that she has trouble sleeping due to her mania and anxiety. Tr. 76.

Plaintiff stated that she can do light cleaning, laundry, vacuum, and cook. Tr. 79-80. She noted that she reads for approximately three to four hours per day and watches television for approximately half of the day. Tr. 80. She stated that she has never obtained a driver's license[2], so she rides the bus and gets rides with others, Tr. 74-75, 354, and she has a few friends. Tr. 81.

With respect to Plaintiff's physical health, Lynne Jahnke, M.D., testified as an internist medical expert at the administrative hearing. Tr. 42-50. Dr. Jahnke noted that Plaintiff has chronic obstructive pulmonary disease (COPD), carpal

---

[2]On October 6, 2014, during a psychological evaluation conducted by Kayleen Islam-Zwart, Ph.D., Plaintiff denied having a driver's license, but reported that she does drive to get to appointments. Tr. 354.

tunnel syndrome, and chronic low back pain with degenerative disc disease. Tr. 43. Dr. Jahnke stated that Plaintiff does not have documented radicular pain, and although she has symptoms, there is nothing on examination that shows any motor or sensory deficits in that area. TR. 47. In response to questioning by Plaintiff's counsel, Dr. Jahnke stated that Plaintiff's complaints of a burning sensation down her posterior spine may or may not be radicular. Tr. 50.

With respect to Plaintiff's mental health, Ellen Rozenfeld, Ph.D, testified as a psychologist medical expert at the administrative hearing. Tr. 50-58. Dr. Rozenfeld noted that Plaintiff has been diagnosed with and treated for bipolar disorder, and she has been diagnosed with an anxiety disorder and PTSD. Tr. 52. Dr. Rozenfeld testified that Plaintiff has a personality disorder, as well as alcohol and cocaine dependence in remission. Tr. 52.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-

disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On December 8, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date and amended alleged onset date, October 27, 2014. Tr. 23.

At step two, the ALJ determined Plaintiff had the following severe impairments: right carpal tunnel syndrome, lumbar degenerative disc disease, mixed bipolar disorder, anxiety disorder NOS, posttraumatic stress disorder,

personality disorder NOS, and alcohol and cocaine dependency in remission since February 13, 2014 (relapse August 2015).  Tr. 23.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 24.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined that she could perform a range of sedentary work with the following limitations: she can lift 10 pounds at a time occasionally and lift or carry 5 pounds at a time frequently; can sit at one time without limitation except for a sit/stand option every 1 hour for about a minute and can stand and walk for 30 minutes at a time each; in an 8 hour workday with normal breaks can sit without limitation (except for the sit/stand option mentioned earlier) and can stand and walk 2 hours total; can occasionally stoop, crouch, and crawl; can frequently climb ramps and stairs but no ladders, ropes, or scaffolds; should avoid concentrated exposure to pulmonary irritants; should avoid all exposure to unprotected heights and commercial driving (due to possible medication side effects); mentally, Plaintiff can understand, remember, and carry out simple, routine work instructions and work tasks; can have superficial contact with the general public; can work with or in the vicinity of coworkers but not in a teamwork type work setting; can handle normal supervision but no over the shoulder or confrontational type of supervision; would do best in a routine work setting with little or no changes; and can handle simple decision making.  Tr. 25.

At step four, the ALJ determined Plaintiff was not able to perform her past relevant work.  Tr. 30.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert (VE), Plaintiff could perform other jobs present in significant numbers in the national economy, including the light exertion level jobs of small product

assembler II and electronics worker, and the sedentary exertion level job of document sorter. Tr. 31-32. The VE testified that the first two jobs identified, even though listed as light exertion level jobs in the DOT, could be performed within the hypothetical as each job would allow a sit/stand option for performance at the sedentary level. Tr. 31, 84-85. The ALJ thus concluded that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from October 27, 2014, through the date of the ALJ's decision, December 8, 2016. Tr. 32.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly consider and weigh the opinion evidence; and (2) improperly discrediting Plaintiff's symptom claims. ECF No. 14 at 10.

## DISCUSSION[3]

### A. Medical Source Opinions

Plaintiff argues that the ALJ erred by improperly according little weight to the mental health limitations expressed by examining psychologist Dr. Islam-Zwart, and by improperly according little weight to the opinion of treating physician William Phillips, M.D. ECF No. 14 at 11-15.

---

[3] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

In weighing medical source opinions in a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An examining physician's opinion is given more weight than that of a non-examining physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

   1.   **Dr. Islam-Zwart**

On October 6, 2014, Dr. Islam-Zwart conducted a Department of Social and Health Services (DSHS) psychological evaluation of Plaintiff. Tr. 352-356. She diagnosed bipolar I disorder, most recent episode manic, post-traumatic stress disorder, generalized anxiety disorder, polysubstance dependence in early full remission, and personality disorder NOS. Tr. 349, 356. Dr. Islam-Zwart opined that Plaintiff had marked impairments in the ability to perform activities within a

schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, and communicate and perform effectively in a work setting. Tr. 350. Dr. Islam-Zwart noted that Plaintiff had severe impairments in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms, and to maintain appropriate behavior in a work setting. Tr. 350.

The ALJ assigned "little weight" to the limitations assessed by Dr. Islam-Zwart. Tr. 29. The ALJ determined that the marked and severe limitations noted by Dr. Islam-Zwart: (i) were inconsistent with Dr. Islam-Zwart's examination findings; (ii) were inconsistent with Plaintiff's reported activities of daily living; and (iii) seemed to be based on Plaintiff's self-reported symptoms and complaints rather than Dr. Islam-Zwart's examination findings. Tr. 29. The ALJ also stated that a claimant may have an incentive to overstate symptoms and complaints during a DSHS evaluation such as the one performed by Dr. Islam-Zwart, because state welfare eligibility is at stake. Tr. 29-30.

The Court finds the ALJ correctly determined that the marked and severe limitations noted by Dr. Islam-Zwart were inconsistent with her examination findings. Tr. 29. This was a specific and legitimate reason to reject Dr. Islam-Zwart's opinion regarding Plaintiff's limitations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the existence of internal inconsistencies within a physician's opinion constitutes a specific and legitimate reason for the ALJ to reject that physician's opinion concerning the claimant's functional limitations). The ALJ specifically cited Plaintiff's scores on the examinations given by Dr. Islam-Zwart: the Mini-Mental Status Exam, and the Trails A and B tests. Tr. 29. The ALJ noted that Plaintiff scored within the normal range on the Mini-Mental Status Exam, which showed that she "exhibited mental control within normal limits." Tr. 29, 355. The ALJ cited Plaintiff's Trails A test score, which was within normal limits, and noted that Plaintiff scored within only

the mildly impaired range on the Trails B test. Tr. 29, 355. According to Dr. Islam-Zwart's report, "[t]he Trail Making Test includes components designed to measure simple and complex attention, and is highly sensitive to the effects of brain impairment." Tr. 355. Dr. Islam-Zwart's assessed marked and severe limitations were thus inconsistent with her own examination findings.

      The Court finds the ALJ properly determined that Plaintiff's reports of "generally good activities of daily living" were inconsistent with Dr. Islam-Zwart's opinion. Tr. 29, 354-55. *See Morgan*, 169 F.3d at 600-01 (considering an inconsistency between a treating physician's opinion and a claimant's reported daily activities a specific and legitimate reason to discount the treating physician's opinion). Plaintiff reported to Dr. Islam-Zwart that she is "very good at housekeeping," and noted that she handles prompt cleaning of a litterbox, does laundry, and "cooks, excessively." Tr. 354. She told Dr. Islam-Zwart that she likes to do arts and crafts projects, although she tends to never finish. Tr. 355. She also noted that she does work around the farm when she is manic. Tr. 355. Plaintiff's ability to drive to her appointments as necessary, attend to her basic hygiene, do the housekeeping, laundry, cooking, and arts and crafts projects, was inconsistent with Dr. Islam-Zwart's assessed marked and severe limitations. This was a specific and legitimate reason for the ALJ to reject Dr. Islam-Zwart's opinion regarding Plaintiff's limitations.

      The Court finds the ALJ correctly determined that Dr. Islam-Zwart's opinion appeared to be based on Plaintiff's self-reported symptoms and complaints rather than Dr. Islam-Zwart's evaluation findings. Tr. 29. As will be discussed in detail below, the ALJ properly discounted Plaintiff's symptom testimony. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. As previously discussed, the limitations expressed by Dr. Islam-Zwart are inconsistent with the results of Plaintiff's Mini-Mental Status Exam, as

well as the Trails A and B tests.  A review of Dr. Islam-Zwart's evaluation report reveals that it largely reflects Plaintiff's reports of limitations, with little independent analysis or diagnosis.  Tr. 348-356.  Reliance on Plaintiff's self-reported symptoms rather than the doctor's examination findings constituted a specific and legitimate reason for the ALJ to reject Dr. Islam-Zwart's opinion regarding Plaintiff's limitations.

Finally, the ALJ opined that a DSHS evaluation is conducted for the purpose of determining the individual's eligibility for state welfare assistance, and the individual is likely aware that eligibility for state welfare assistance is dependent on the evaluation.  Tr. 29.  In rejecting Dr. Islam-Zwart's opinion, the ALJ stated that "the individual has an incentive to overstate symptoms and complaints."  Tr. 29-30.  "The regulations require that every medical opinion will be evaluated, regardless of its source."  *Henderson v. Astrue*, 634 F.Supp.2d 1182, 1192 (E.D. Wash. 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  "[T]he purpose for which medical reports are prepared does not provide a legitimate basis for rejecting them."  *Henderson*, 634 F.Supp.2d at 1192 (citing *Lester*, 81 F.3d at 832.)  It was improper for the ALJ to consider the purpose of Plaintiff's DSHS evaluation as a reason to reject Dr. Islam-Zwart's opinion.  However, the Court finds the error to be harmless because the ALJ cited three specific and legitimate reasons for according little weight to Dr. Islam-Zwart's opinion.  *See Johnson v. Shalala,* 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result); *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

The Court finds the marked and severe psychological limitations assessed by Dr. Islam-Zwart are unsupported and inconsistent with the weight of the record evidence, and the ALJ provided specific and legitimate reasons, supported by substantial evidence, for according little weight to the limitations.

///

### 2. Dr. Phillips

On February 5, 2014, treating physician Dr. Phillips opined that Plaintiff was capable of sedentary work for six to twelve months based on chronic radicular low back pain. Tr. 323-328, 369-371. The ALJ assigned "little weight" to Dr. Phillips' opinion, stating there was "no documented objective radicular pain or motor sensory deficits," Tr. 29, and noting that pain center records from January 13, 2016, showed Plaintiff's functional status with medication was a ten out of ten, meaning no symptoms and "suggesting her pain was under good control." Tr. 29, 564. The Court finds that this was a specific and legitimate reason to give little weight to Dr. Phillips' opinion. *See Tommasetti*, 533 F.3d at 1041 (incongruity between treating physician's opinion and her medical records provided an additional specific and legitimate reason for rejecting treating physician's opinion of the claimant's limitations). By providing a specific, legitimate reason based on substantial evidence in the record, the ALJ did not err in assigning little weight to Dr. Phillips' opinion. *Valentine*, 574 F.3d at 692 (when rejecting a treating physician's opinion that is contradicted by another doctor, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record).

The ALJ assigned great weight to the opinion of non-examining physician Dr. Jahnke. Tr. 28. The ALJ noted that Dr. Jahnke "had the entire longitudinal medical record evidence to review," whereas the treating sources, examiners, and other reviewers did not. Tr. 28. Further, the ALJ stated that Dr. Jahnke testified at the administrative hearing and was subject to cross-examination. Tr. 28-29. At the administrative hearing, Dr. Jahnke testified that Plaintiff "does not have documented radicular pain, has symptoms but there's nothing on exam that shows any motor or sensory deficits in that area." Tr. 47. On cross-examination by Plaintiff's counsel, Dr. Jahnke stated, "[Plaintiff] complains of a burning sensation down her posterior spine. That may or may not be radicular." Tr. 50.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony, and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), and this Court may not substitute its own judgment for that of the ALJ. 42 U.S.C. § 405(g). Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, this Court's role is not to second-guess that decision. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Having reviewed the ALJ's evaluation of the medical evidence, the Court finds the ALJ's interpretation was based on substantial evidence, and the ALJ supported the findings with specific and legitimate reasoning.

**B.     Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ erred by improperly discrediting her symptom complaints. ECF No. 14 at 16-17. It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. In considering Plaintiff's symptoms, the ALJ must follow a two-step analysis. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is objective evidence of an underlying impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. *Id*. at 1036 (quotation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*; citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "General findings are insufficient: rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found that the intensity, persistence, and limiting effects of the physical and mental symptoms testified to by Plaintiff were not consistent with the medical evidence to the extent that they would limit Plaintiff's

ability to perform work related activities. Tr. 28. The ALJ recounted the following reasons for discrediting Plaintiff's symptom testimony: (i) inconsistencies with Plaintiff's activities of daily living; (ii) inconsistencies with the objective evidence; (iii) Plaintiff responded well to treatment; and (iv) concerns about Plaintiff's motivation to work. Tr. 28. The ALJ provided specific examples of each. Tr. 28.

As determined by the ALJ, the record reflects that Plaintiff's activities of daily living were "quite involved," which demonstrated greater functional abilities than alleged. Tr. 28. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603. While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was proper for the ALJ to find Plaintiff's reports of activities (ability to drive to appointments as necessary, bathe about 4 days per week, engage in housekeeping, including prompt cleaning of a litterbox, laundry, and cooking, do arts and crafts projects, ride the bus, shop at a convenience store, and have a few friends, Tr. 28), were inconsistent with the limitations Plaintiff alleged, and detracted from her overall credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *see also Morgan*, 169 F.3d at 599-600, 603 (affirming the ALJ's adverse determination regarding symptom testimony and noting that evidence of the claimant's daily activities, such as the ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child, served as evidence of his ability to work); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the ALJ's adverse determination regarding symptom testimony and noting that the claimant's allegation of disability was undermined by testimony about her daily activities, such as attending to the needs of her two young children, cooking, and shopping).

The ALJ also noted that the objective evidence in the record undermined Plaintiff's allegations regarding the severity of her symptoms. Tr. 26, 28. An ALJ may, with clear and convincing reasons, discount the claimant's statements if not fully supported by objective evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). These reasons need only be supported by substantial evidence. *Rollins*, 261 F.3d at 857. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Id.*, citing 20 C.F.R. 404.1529(c)(2).

The ALJ stated the record showed that Plaintiff's pain is typically a six to seven out of ten (ten being the worst pain) with medication, and a nine out of ten without medication, however, she was able to appear at the hearing even though she had been out of pain medication for two months. Tr. 26. Although Plaintiff later changed her story to say that she was not out of medication, just the prescriptions, the ALJ noted that Plaintiff originally indicated she had not taken any of her pain medication for two months. Tr. 26, 63-66. The ALJ also stated that, despite undergoing carpal tunnel surgery on her right hand, Plaintiff now alleges weakness and shaking in both of her hands, although she has not brought this to the attention of her doctor. Tr. 26, 43, 68-71, 74. The ALJ indicated that Plaintiff does not think her medication is working, but she has not yet seen her doctor. Tr. 26. The ALJ stated that although Plaintiff said she does not like crowds of people because she has anxiety, she is able to ride the bus, shop at a convenience store, and she has a few friends. Tr. 26.

The ALJ also cited testimony presented by non-examining physician Dr. Jahnke that Plaintiff was "doing quite well" fifteen days after her right hand carpal tunnel surgery, Tr. 26, 422, and that Plaintiff complained of left hand carpal tunnel symptoms and a nerve conduction study was ordered, but there is no evidence that

this study was done. Tr. 26, 43, 70-71, 424. The ALJ cited Dr. Jahnke's testimony that there is no documented objective radicular pain or motor sensory deficits to correspond with Plaintiff's complaints of chronic low back pain, but there are records from a pain center that suggest her pain was under good control. Tr. 27. The ALJ referenced Dr. Jahnke's testimony that Plaintiff's alleged burning pain in her legs does not correlate with the MRI findings or Plaintiff's report in January 2016 that her pain was stable. Tr. 27, 44. Further, the ALJ cited Dr. Jahnke's testimony that Plaintiff periodically complained of neck pain, but a cervical spine x-ray was normal in April 2014. Tr. 27, 45. The ALJ highlighted the inconsistency between Plaintiff's two Global Assessment of Function (GAF)[4] scores, which were within only two months of each other. Tr. 27. The ALJ noted that the second, and lower, GAF score also seemed inconsistent with Plaintiff's report of daily activities. Tr. 27.

As indicated by the ALJ, the objective medical evidence of record does not support the disabling symptoms and limitations alleged by Plaintiff in this case. Tr. 26-28. This was a proper basis for the ALJ to discredit Plaintiff's symptom testimony. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Rollins*, 261 F.3d at 857.

---

[4]While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Moreover, the GAF scale is no longer included in the *DSM–V*. Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013). "It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Diagnostic And Statistical Manual of Mental Disorders, 16 (5th ed. 2013).

The ALJ considered that the record showed medication was helpful in improving Plaintiff's mental health symptoms. Tr. 26. The effectiveness of medication in alleviating symptoms is a relevant factor to consider in evaluating the severity of a claimant's allegations. 20 C.F.R. § 416.929(c)(3)(iv); *Morgan*, 169 F.3d at 599 (an ALJ may properly rely on a report that a claimant's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (impairments controlled by treatment cannot be considered disabling). The ALJ stated that, at that time, it was noted that Plaintiff's bipolar and anxiety were doing "very well" on her medication regimen. Tr. 27. As cited by the ALJ, Plaintiff's psychiatrist, who followed Plaintiff for less than one year, transferred Plaintiff back to her primary care provider for medication management because she was notably stable in October 2015. Tr. 27.

Additionally, the ALJ determined the record evidence does not suggest that Plaintiff is motivated to work consistently. Tr. 28. The Ninth Circuit has held that "poor work history" or a showing of "little propensity to work" during one's lifetime may be considered as a factor which negatively affects a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ indicated Plaintiff's limited work history (at 45 years old she has reported income only three times, she has never earned over substantial gainful activity, the most Plaintiff has ever earned was $5,068.00) called into question whether it was Plaintiff's medical impairments or other factors that affected her ability to maintain fulltime employment. Tr. 28. Given that the record supports the ALJ's finding regarding Plaintiff's limited work history, it was proper for the ALJ to note Plaintiff's potential lack of motivation to work consistently when discrediting Plaintiff's symptom testimony.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in

evidence. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision should be affirmed. Therefore, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED January 23, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE